UNITED STATES of America, Plaintiff–Appellee,

v.

Ismael LOPEZ–ESCOBAR, Defendant–Appellant.

No. 88–6157.

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1989.

Robert Julius Lerma, Brownsville, Tex., (court-appointed), for defendant-appellant.

Paula C. Offenhauser, Kathlyn Giannuala, Frances H. Stacy, Asst. U.S. Attys., and Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Ismael Lopez–Escobar pled guilty to transporting an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(B). On appeal, he challenges only his sentence. Lopez–Escobar contends that the district court unreasonably departed from the guideline sentencing range. He argues first that the district court based the departure in part upon his criminal history, which had already been taken into account in determining the guideline range. Lopez–Escobar also contends that, even if the district court's departure is not based upon impermissible factors, it nonetheless is unreasonable because the district court made inadequate

factual findings. Because we find that the district court's departure was reasonable, we affirm the sentence.

I

The pre-sentence report recommended that Lopez–Escobar be assigned an offense level of 13 and criminal history score of 6, resulting in a criminal history category of III. The district judge adopted these recommendations. The guidelines establish a sentencing range of 18 to 24 months for a defendant having an offense level of 13 and a criminal history category of III.

The pre-sentence report also suggested that a departure upward from the guidelines might be appropriate on either of two grounds. First, the report noted that Lopez–Escobar's crime had involved thirty-five illegal aliens, an unusually large number of persons. The sentencing guidelines explicitly recognize that such a large-scale smuggling operation may be an appropriate grounds for departure in immigration offenses. *See* Application Note 8 to § 2L1.1. The pre-sentence report also noted that there was reason to believe that Lopez–Escobar had committed crimes under an alias, "Braulio Ocana Ramirez," and some of these crimes were not incorporated into the calculation of Lopez–Escobar's criminal history category.

At the sentencing hearing, the judge questioned Lopez–Escobar about the crimes attributed to Braulio Ocana Ramirez, whose fingerprints matched those of Lopez–Escobar. Lopez–Escobar told the judge that Ramirez was a half-brother who had the same fingerprints as Lopez–Escobar himself, and that Ramirez on occasion claimed to be Lopez–Escobar. Although the judge expressed some skepticism about this "evil twin" theory of the crimes, the judge expressly declined to make any findings about whether Lopez–Escobar was guilty of the Ramirez crimes.

At the conclusion of the hearing, the judge commented,

The Court will make the following commentary regarding the departure from the guidelines structure. And that

is in this particular case there were a great number of aliens involved, more than the ordinary, and hence there should be an enhancement forthcoming which serves the objectives of the Sentencing Guidelines Act. And in addition to that, the defendant does have convictions, namely the three to which he has admitted. But the Court is not going to make any finding regarding the other allegations, despite the fact that the fingerprint experts have indicated that he is one and the same person.

## II

Lopez–Escobar has not contested the district court's determination of the guideline range applicable to his crime. Instead, he challenges the sentencing judge's upward departure from that range. The guidelines permit the sentencing court to impose a sentence outside the guideline range if the court finds that "an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The district court must state its reason for the departure, and the sentence imposed must be reasonable in light of the articulated rationale. 18 U.S.C. § 3742(e), (f); Guideline § 4A1.3 (adequacy of criminal history), § 5K2.0 (grounds for departure); see also, United States v. Mejia–Orosco, 867 F.2d 216, 219 (5th Cir.1989), on rehearing, 868 F.2d 807 (1989); United States v. Salazar–Villarreal, 872 F.2d 121, 122 (5th Cir.1989).

Lopez–Escobar first contends that the departure by the district court was unlawful because it was based in part upon his criminal history. Lopez–Escobar argues that, since the court declined to hold Lopez–Escobar responsible for crimes of the mysterious Ramirez, the only convictions recognized by the court had already been taken into account in determining the guideline range. See § 4A1.3 ("[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," the court may depart from the guideline range).

## III

Lopez–Escobar's argument on appeal rests upon his construction of the sentencing judge's explanation for the challenged departure. While the sentencing judge made the number of aliens a basis for the departure, Lopez–Escobar argues that his criminal history was also a basis for the departure. But the sentencing judge's comments about the defendant's record are susceptible of another interpretation. The judge's references to earlier crimes may have been intended not to identify an additional ground for departure but, on the contrary, to distinguish away such a ground.

To resolve this controversy, we must consider the judge's remarks in the context of the presentence report. That report necessarily structures discussion at the sentencing hearing. See Fed.R.Crim.P. 32; 18 U.S.C. § 3552; Guideline §§ 6A1.1–6A1.3. See also United States v. Mejia–Orosco, 867 F.2d 216, 219 (5th Cir.1989), on rehearing, 868 F.2d 807 ("The district court calculates the offense level and the criminal history category from the information contained in the pre-sentence report"); United States v. Thomas, 870 F.2d 174, 176 (5th Cir.1989) (judge may choose to believe the presentence report's construction of the evidence when resolving factual issues). The presentence investigation had recommended an upward departure on the basis of the number of aliens involved in the illegal activity. The investigation also proposed a departure on the basis of crimes not properly accounted for by Lopez–Escobar's criminal history category. This second basis for departure depended, however, not upon the three convictions recognized by the sentencing judge, but instead upon various unadjudicated charges which the presentence investigation attributed to O'Cana Ramirez, and thus to Lopez–Escobar, under the heading, "Other Criminal Conduct." Read in light of the PSI, the sentencing judge's comments upon Lopez–Escobar's criminal history can be read

more easily as an express *refusal* to foot the departure from the guidelines on that ground.

A sentencing judge's express articulation of his refusal to make certain factual findings is, of course, a commendable clarification of the reasons behind his sentencing decision, although here, with benefit of appellate hindsight, we find the explanation not as precise as it might have been. The guidelines require that a sentencing judge identify reasons for a departure, *see United States v. Mejia–Orosco*, 867 F.2d at 219, 221, and the Federal Rules of Criminal Procedure mandate that a judge explain which, if any, factual disputes about the validity of a presentence investigation have been resolved in the sentencing procedure, F.R.Crim.P. 32(c)(3)(D). Judge Vela's statements were thorough and reflect a determination to comply with the rules, although his analysis unfortunately is susceptible to more than one reading.

■ Sentencing judges, however, need not insulate their findings against all possible misreadings, or preface their findings with ritualized incantations that partition reasons into specialized categories. As we said in *Mejia–Orosco*, "We recognize that so formal a requirement would interfere with the smooth operation of the sentencing hearing." 867 F.2d at 221. It is enough that, as here, the sentencing judge addresses the defendant's arguments and complies with applicable legal limits in a manner that is comprehensible when the sentencing hearing is viewed in the context of the record—including the presentence investigation—as a whole.

Our reading of the sentencing court's reasons for its departure is different from Lopez–Escobar's. The court expressly footed its departure on the number of aliens smuggled into the country. The court noted the problem with Lopez–Escobar's criminal history, but declined to base the departure upon that ground. Apparently the court believed that since the statutorily prescribed maximum sentence was warranted on the basis of the size of Lopez–Escobar's operation alone, it was unnecessary to resolve the factual issues attending Lopez–Escobar's mysterious relationship with Ramirez. Thus, the better reading is that the court mentioned Lopez–Escobar's three uncontested crimes not as an additional foundation for its departure, but rather to clarify the limits of its findings with respect to the criminal history issues.

## IV

■ There can be little doubt that the extraordinary number of aliens involved in Lopez–Escobar's crime is an appropriate basis for an upward departure. Application Note 8 to § 2L1.1 expressly suggests that sentencing courts consider the possibility of an upward departure when the crime involves a very large number of aliens. *See also United States v. Velasquez–Mercado*, 872 F.2d 632 (5th Cir.1989); *United States v. Salazar–Villarreal*, 872 F.2d 121 (5th Cir.1989) (both approving upward departures based in part upon the number of aliens transported illegally).

■ The only remaining question is whether the size of the district court's upward departure—from the guideline maximum of two years to the statutory maximum of five years—is reasonable in light of the grounds specified by the court. We have noted that "the mere fact that a departure sentence exceeds by several times the maximum recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable." *United States v. Roberson*, 872 F.2d 597, 606 n. 7 (5th Cir.1989) (citing cases), *petition for cert. filed*, No. 89–5136 (July 18, 1989). *See also Salazar–Villarreal*, 872 F.2d 121 (increase by a factor of more than three). The increase of Lopez–Escobar's sentence by a factor of 2.5 is not so great as the increases catalogued in *Roberson*. Moreover, if mathematical exactitude is not to be expected in the sentencing process generally, *Mejia–Orosco*, 867 F.2d at 219, that is especially so in cases where a departure is appropriate. Our review is only for reasonableness. Contrary to the contentions of Lopez–Escobar, no further factual findings were necessary to support the departure.

We find that the sentence imposed in this case was reasonable.

## V

 Even if we were to agree that the district judge considered the defendant's prior criminal conduct as well as the large number of aliens involved when it departed from the guidelines and imposed a sentence of five years, we nonetheless could not fault its conclusion. It would not matter—because it would be the same thing—if the judge had stated explicitly that he would not enhance for these large number of aliens if the criminal history were category 1. The point is that the district judge was not disputing the appropriateness of the criminal history category at all. Nothing suggests that the ambit of the district judge's discretion to enhance for the large number of aliens does not include consideration of the category history—properly set.

Because we find no defect in the sentence imposed, the sentence of the district court is, in all respects,

AFFIRMED.