**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Cornelius CAMPBELL, Franklin Leon Blige, Defendants–Appellants.**

**No. 88–8370.**

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1989.

A. Montague Miller, Dye, Miller, Tucker, Everitt, Augusta, Ga., for Campbell.

Richard E. Allen, Augusta, Ga., for Blige.

J. Michael Faulkner, Asst. U.S. Atty., Augusta, Ga., Andrew Levchuk, Appellate Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Before RONEY, Chief Judge, FAY, Circuit Judge, and ALLEN *, Senior District Judge.

RONEY, Chief Judge:

Codefendants William Cornelius Campbell and Franklin Leon Blige appeal sentences imposed under the federal sentencing guidelines. Campbell raises constitutional challenges to the Sentencing Reform

---

* Honorable Charles M. Allen, Senior U.S. District Judge for the Western District of Kentucky, sitting by designation.

Act of 1984, the United States Sentencing Commission, and the sentencing guidelines promulgated by the Commission. Blige challenges the manner in which the district court applied the guidelines to him. We affirm.

### Facts

In December 1987, Campbell and Blige, using toy guns, robbed a C & S Bank in Augusta, Georgia. They took approximately $25,000 and fled on foot. Within eight minutes, police caught them both still in possession of most of the money.

Police apprehended Campbell in a wooded area about half a block from the bank. He confessed at once and provided details of the crime, including a hand-drawn diagram, and assisted in recovering the plastic gun and clothing he had discarded immediately after the robbery.

Apprehending Blige was more difficult. With guns drawn, police chased him into a residential area and fired at least one shot at him before realizing he was unarmed. Initially, he lied to FBI agents, telling them that he was in the area visiting a friend and had run from the police only because he had a prior criminal record.

Later, both defendants obtained counsel and reached plea agreements, each promising to plead guilty and testify honestly if called as a witness. Both defendants pled guilty. The district court applied the new sentencing guidelines. The court departed downward from the applicable guideline range for Campbell and upward for Blige, sentencing each to 144 months imprisonment. The court allowed Campbell, but not Blige, a two-level reduction for acceptance of responsibility.

### Constitutional Challenges

Defendant Campbell argues that application of the sentencing guidelines is unconstitutional because—

(1) The Sentencing Reform Act of 1984 violated the Delegation Doctrine by assigning an essentially legislative role to the Sentencing Commission.

(2) The Act violated the Separation of Powers Doctrine by including Article III judges on the Commission.

(3) The guidelines which were ultimately adopted created a sentencing scheme which was so mechanical, rigid, and restrictive of the judge's discretion as to deny due process.

In a decision handed down after the briefs were filed in the present case, the Supreme Court upheld the guidelines and the Sentencing Reform Act of 1984 against these same delegation and separation of powers arguments. *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

*Mistretta* did not involve a due process challenge to the guidelines. Procedural and substantive due process challenges to the guidelines identical to those raised here, however, have been rejected subsequently by this court. *See United States v. Erves,* 880 F.2d 376 (11th Cir.1989).

### Application to Blige

■ Defendant Blige's presentence report recommended that he not receive a reduction for acceptance of responsibility due in part to his initial lies to authorities. The report stated that although Blige had a substantial criminal record, he did not fit Guidelines § 4B1.1's definition of a career offender since he had only one prior felony conviction for a violent or drug-related felony. Without a career criminal adjustment, his total offense level was 20. This level 20 and his criminal history category VI put him in a guidelines range of 70–87 months. *See* Guidelines, Chap. 5 at 5.2. The report, however, recommended an *upward* departure to 120 months because Blige's criminal history category did not adequately reflect the seriousness of his past criminal conduct.

Blige maintains that (a) denying him a two-level reduction for acceptance of responsibility was an incorrect application of the guidelines, and (b) the upward departure was unreasonable. Sections 3742(e)(2) & (3) of Title 18 U.S.C. authorize this Court to review Blige's claims. Blige's presentence investigation can be contrasted to

that of Campbell who received the benefit of a downward departure from the guidelines. Campbell's presentence investigation report recommended a two-level guidelines reduction for acceptance of responsibility under Guidelines § 3E1.1(a). The report further stated that because Campbell had two prior violent-felony convictions for robbery and aggravated assault (in addition to convictions for burglary, grand larceny, concealing stolen goods, and escape), he was considered a career criminal under Guidelines § 4B1.1. His total offense level of 34 as a career offender and his criminal history category of VI placed his guidelines range at 262–327 months. *See* Guidelines, Chap. 5 at 5.2 (guidelines sentencing table). The report recommended a downward departure to 200 months because Campbell had been cooperative throughout and since under recent guidelines changes the applicable level would have been 32 with a range of 210–262 months if the crime had occurred after January 15, 1988.

■ We must accept the district court's findings of fact concerning presentence information unless they are "clearly erroneous," give "due deference" to the court's "application of the guidelines to the facts," and determine whether the departure from the guidelines was "unreasonable." 18 U.S.C. § 3742(e).

### A. *Acceptance of Responsibility*

Guideline § 3E1.1 provides:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of a conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

Due to the judge's "unique position to evaluate" whether a defendant sufficiently demonstrates acceptance of responsibility, "the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." Guidelines § 3E1.1, Commentary, Application Note 5; *United States v. Spraggins*, 868 F.2d 1541, 1543 (11th Cir. 1989).

Other than entering a plea agreement and pleading guilty, Blige did little to demonstrate an "*affirmative* acceptance of responsibility." He initially denied responsibility, lying to the FBI. Although he did not deny involvement when questioned by the probation officer who prepared the presentence report, Blige characterized the robbery as an "accident" which resulted from "joking around." Perhaps, as he now contends, he meant "incident" when he said "accident," but nonetheless he denigrated the seriousness of a crime in which he terrified bank employees, stole $25,000, and led police on a dangerous chase into a residential area. There clearly was a foundation for the district court's finding that Blige failed to demonstrate an affirmative acceptance of responsibility.

### B. *Departure from the Guidelines*

■ Guidelines § 4A1.3 authorizes a departure from the guidelines if "the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that [he] will commit further crimes." Section 4B1.1 states that a defendant is a career offender if—

(1) the defendant was at least eighteen years old at the time of the instant offense,

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Blige concededly met the first two career offender requirements. His criminal record did not meet requirement three, however, because he had only one prior felony conviction (for robbery) which satis-

fied the definition of a qualifying offense. He had three prior burglary convictions, but they involved commercial buildings rather than dwellings and thus, the government concedes, did not constitute violent crimes under the guidelines. *See* Guidelines § 3B1.2, Commentary, Application Note 1. He had two prior controlled substance convictions, but pursuant to plea bargains, they were reduced from felony charges to *misdemeanor* convictions. Therefore, they too did not qualify for career offender purposes under the guidelines.

He also had non-qualifying convictions for credit card theft and receiving stolen property. In total, Blige had prior convictions for eight separate crimes in just eleven years, beginning when he was 17 and continuing until he was 29. The present offense occurred when he was 31.

The absence of a second qualifying prior felony placed Blige 14 levels lower than he would have been as a career criminal. The potential sentences at this lower level were approximately one-fourth (70–87 rather than 262–327 months) the length of those within the higher range for a career criminal.

The district court found that Blige was a habitual criminal with a "likelihood of ... recidivism," even though his criminal history category failed to reflect this. These findings were not clearly erroneous. Although Blige's prior offenses did not meet the definitional requirements of Guidelines § 4B1.1, his crimes were substantial in number and serious in character. In fact, the number and nature of his criminal convictions were not significantly less serious than the convictions which qualified Campbell as a career offender.

The upward departure for Blige was warranted under the circumstances, and the amount of the departure was not unreasonable, given his ongoing criminal involvement.

AFFIRMED.