**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**James T. WEAVER,**
**Defendant–Appellee.**

No. 89–7295.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1991.

Charysse L. Alexander, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellant.

Susan Graham James, Jeffery C. Duffey, Montgomery, Ala., for defendant-appellee.

Before CLARK, Circuit Judge, MORGAN and HILL *, Senior Circuit Judges.

CLARK, Circuit Judge:

This case involves a district court's downward departure from the sentence prescribed by the Sentencing Guidelines. The district court based its departure on the guidelines' failure to adequately consider several factors and on the fact that without such departure, the resultant penalty was more harsh than necessary to accomplish its deterrent effect. Because we find that this is an appropriate case for departure from the guidelines, that the district court adequately explained the basis for its departure, and that the degree of the departure was reasonable under the circumstances, the decision of the district court is AFFIRMED.

FACTS

Defendant-appellee Weaver pled guilty to escaping from the minimum-security feder-

---

* See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

al prison camp at Maxwell Air Force Base in Alabama. There he was serving a seven-year sentence on a previous conviction for drug possession. On May 19, 1988, he escaped by walking away from his assigned work detail and left the base. On September 4, 1988, he voluntarily returned to Maxwell and surrendered to authorities. In the Presentencing Report (PSR), the probation officer calculated Weaver's offense level for the escape to be eleven: base level of 13 minus 2 for acceptance of responsibility. *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2P1.1(a)(1) and 3E1.1(a) (Nov. 1989). This adjusted level, coupled with his criminal history category of IV, prescribes a guideline sentence range of 18–24 months. The PSR identified no factors to warrant a departure from the prescribed range. However, Weaver's attorney submitted a supplement to the PSR identifying several bases for a downward departure from the prescribed range. Only three bases are involved in this appeal:[1] first, failure of the guidelines to adequately consider an escapee's voluntary return to custody more than 96 hours after escape from a non-secure prison; second, failure of the guidelines to consider the effect of a subsequent sentence on parole eligibility from sentences imposed under the pre-guidelines system;[2] and third, the district court's belief that without a departure, the resultant total punishment would be unnecessarily harsh to serve as a deterrent. At the sentencing hearing, the court made the following remarks:

> [E]ven though you were on an escape status for approximately three months, some recognition should be given to the fact that you turned yourself in.... And I am also conscious that in addition to any sentence that I impose here, you

shot yourself in the foot in other ways. You are not going to get the release from prison in all likelihood that you would have gotten had you not walked off.... My concern in a case of this sort is to be sure that where they put people at Maxwell and give them minimum supervision, ... there [is] a deterrent, and I feel the guidelines sentences, in your kind of case, is more severe than is necessary to serve as a deterrent.

The district court then sentenced Weaver to a term of seven months to be served consecutively with his drug conviction. The government objected to the downward departure and this appeal followed.

### DISCUSSION

 We have jurisdiction to review a sentence which is outside the guideline range. 18 U.S.C.A. § 3742 (West 1985 & Supp.1989). *See, e.g., United States v. Fossett,* 881 F.2d 976, 978–79 (11th Cir. 1989). The statutory provision which allows a sentencing court to depart from the prescribed sentencing range is clear and provides that a court may depart from the guidelines if " 'the court finds that there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines,' and the court believes that the circumstances 'should result in a sentence different from that [prescribed by the guidelines].' " *United States v. Crawford,* 883 F.2d 963, 964 (11th Cir.1989) (quoting 18 U.S.C.A. § 3553(b) (West Supp.1989)). *See also United States v. Palta,* 880 F.2d 636, 639–40 (2nd Cir.1989) (concluding that the statute allows "a court [to] depart even though the Sentencing Commission in for-

---

1. Weaver's attorney also argued that psychological factors and an unjust parole assessment from the previous drug conviction because of a mistake in the PSR were mitigating factors. However, since the district court did not specify these factors as grounds for departure, we will not consider them on appeal.

2. For his drug related conviction, Weaver was sentenced to 7 years (or 84 months) under the old parole system. Shortly after Weaver began serving his sentence for the drug conviction, the parole commission evaluated that conviction

and concluded that his offense category and salient factor indicated a range of 64–78 months to be served in prison if he made good institutional adjustment and program achievement. *See* 28 C.F.R. §§ 2.12, 2.13 (1988). Following his escape, the parole commission reassessed Weaver's original parole guideline range and added to it the required 8–16 month penalty. *See Id.* at § 2.36. This resulted in a parole range of 72–94 months; he would not, however, have to serve more than 84 months.

mulating the guidelines has considered and listed a particular kind of misconduct"). While the standard is simple to state, appellate review of a district court's decision to depart from the guidelines is complex as such a decision involves the district court's resolution of questions of law and of fact, and ultimately of what punishment best fits the circumstances of a particular case.

## I. STANDARDS OF REVIEW

■ This court has not explicitly set out the standards of review applicable to departure cases; however, our earlier cases foreshadow the approach we adopt today. *See, e.g., United States v. Carrillo,* 888 F.2d 117, 118 (11th Cir.1989) (district court's factual findings must be accepted unless clearly erroneous); *United States v. Campbell,* 888 F.2d 76, 78–79 (11th Cir. 1989) (same); *Crawford,* 883 F.2d at 964–66 (exercising de novo review of sentencing court's determination that guidelines did not adequately consider certain aggravating circumstances and concluding that nothing in record indicates that the departure was unreasonable). We agree with the First Circuit's assessment in *United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989),[3] and conclude that appellate review of departure cases consists of three steps. First, we will determine whether the guidelines adequately consider a particular factor so as to preclude a district court from relying upon it as a basis for departure. We exercise de novo review of this question of law. Second, we must determine whether there ex-

ists sufficient factual support for the departure. This review implicates the district court's fact-finding role and we are constrained from reversing its findings except for clear error. 18 U.S.C.A. § 3742(e) (West Supp.1989) (appellate courts "shall accept the findings of fact of the district court unless they are clearly erroneous"). Finally, "once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness." *Diaz–Villafane,* 874 F.2d at 49. *See* 18 U.S.C.A. § 3742(e)(3). In this vein, we must be mindful of "the factors to be considered in imposing a sentence, as set forth in chapter 227 [18 U.S.C.A. § 3553(a)] of this title," 18 U.S.C.A., § 3742(e)(3)(A),[4] and evaluate these in light of "the reasons for the imposition of the particular sentence as stated by the district court," 18 U.S.C.A. § 3742(e)(3)(B). The statute further requires appellate courts to "give due regard to the opportunity of the district court to judge the credibility of the witnesses ... and [to] give due deference to the district court's application of the guidelines to the facts." 18 U.S.C.A. § 3742(e).[5]

## II. GROUNDS FOR DEPARTURE

Since the inquiry here into whether particular factors are adequately considered by the guidelines is closely related to the inquiry into whether the record supports

---

**3.** At least two other circuits have expressly adopted the First Circuit's approach. *See United States v. White,* 893 F.2d 276, 277 (10th Cir. 1990); *United States v. Joan,* 883 F.2d 491, 493–94 (6th Cir.1989) (concluding that the three-step analysis "is a highly intelligent, thoughtful exposition of the basis for departure").

**4.** 18 U.S.C.A. §§ 3553(a)(1)–(7) (West 1985 & Supp.1989) set out the factors which the district court must consider when imposing a sentence. These include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to provide an adequate deterrent, to protect the public, and to afford an opportunity for rehabil-

itation and treatment; (3) the range of sentences available under the Sentencing Guidelines; and (4) the need to avoid unwarranted disparities in sentencing.

**5.** We note that the Sentencing Commission has recommended Congress amend the Sentencing Reform Act to " 'state clearly' that the guidelines are general standards regarding the appropriate sentence in the typical case, not compulsory rules." *Reports and Proposals—Sentencing Reform,* 46 Crim.L.Rep. 1389 (1990). While we recognize that this recommendation is not controlling, we find it confirms our understanding of the deference we should afford sentencing courts in this endeavor.

the district court's factual findings relating to those factors, we may resolve these questions simultaneously.

To recapitulate, the district court departed from the guidelines for three reasons: first, failure of the guidelines to adequately consider an escapee's voluntary return to custody more than 96 hours after escape from a non-secure prison; second, failure of the guidelines to consider the effect on parole eligibility in sentences imposed under the pre-guidelines system; and third, the district court's belief that without some departure, the total punishment would be unnecessarily harsh to serve as a deterrent.

### A. Voluntary Return to Custody.

■ Since the guidelines clearly consider the prisoner's voluntary return, the security level of the prison, and the amount of time the escapee remains at large,[6] we must focus on whether the guidelines *adequately* take these factors into account. *See United States v. Crawford,* 883 F.2d 963, 966 (11th Cir.1989) (departure for aggravating role permissible even though defendant's role did not rise to level defined under § 3B1.1). *United States v. Palta,* 880 F.2d 636, 639–40 (2nd Cir.1989) (departures permissible even if guidelines list particular factor because consideration may be inadequate). Of primary importance to appellee is the significance of the 96–hour deadline. It is undisputed that Weaver voluntarily returned to custody following his escaping from a non-secure facility. We agree with the district court that the guidelines do not adequately consider a prisoner's voluntary return to custody after 96 hours. Given the magnitude of the reduc-

tion available under U.S.S.G. § 2P1.1(b)(2) [7], we do not think the Commission intended to erect an impenetrable barrier at 96 hours; that is, an escapee who returns after 97 hours could receive the benefit of some reduction under this guideline section. However, since appellant did not return to custody until three months after he escaped, we conclude that any departure based on his voluntary return is unreasonable.

The guidelines state that "the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case." U.S.S.G. ¶ 4(b) at 1.6. The guidelines expressly contemplate two types of departures. This case involves the first type, "in which the guidelines provide specific guidance for departure, by analogy or by other numerical; or non-numerical suggestions.... The Commission intends such suggestions as policy guidance for the courts." U.S.S.G. ¶ 4(b) at 1.7. *See generally United States v. Fayette,* 895 F.2d 1375, 1377–78 (11th Cir.1990) (discussing factors which determine whether court's departure should be guided or unguided). We conclude that while the 96–hour time frame is not absolute and is itself a guideline which district courts are to adapt to individual cases, an escapee's voluntary return to custody after 3½ months comes too late to support a reasonable departure from § 2P1.1(b)(2).[8]

### B. The Parole Guidelines and Sentencing Guidelines Interface.

■ This case is of a kind that will not appear except during the transition from

---

**6.** U.S.S.G. § 2P1.1(b)(2) states: "If the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours, decrease the offense level under § 2P1.1(a)(1) by 7 levels...." The overall structure of the guideline is significant; it first identifies the offense level for an escape from any type of facility, and then grants a special reduction which turns on three distinct factors. In this case, we must determine how those factors interrelate with the offense level reduction.

**7.** The offense level reduction of U.S.S.G. § 2P1.1(b)(2), if applied to the crime charged in

this case, corresponds to a 76% reduction in the sentence for escape. Thus, an escapee who returns within 96 hours would receive a sentence of 2–8 months, while one who returns after 97 hours would receive a sentence of 18–24 months.

**8.** *See United States v. Birchfield,* 709 F.Supp. 1064, 1069 (M.D.Ala.1989) (the court in dicta opined that an offender who remains at large for two weeks and voluntarily returns should not receive the benefit of the offense level reduction, but that he or she should be sentenced at the bottom of the applicable range).

the parole system to the Sentencing Guidelines.[9] Although the additional term added by the Parole Commission to Weaver's parole eligibility range appears to be an additional *sentence*, it in fact does nothing more than reduce the difference between the amount of the actual sentence imposed by the sentencing court and the amount of time the appellee must serve before being eligible for parole. The effect of the escape is twofold: first, it lengthens appellee's original prison term by delaying his eligibility for parole; and second, it subjects him to a second prison term to be served consecutively to the first. It appears that the district judge viewed this as a double penalty that warranted a departure from the guidelines. It is clear that there would be no extension if both sentences had been imposed under the guidelines; the absence of a parole mechanism under the guidelines renders it impossible. The guidelines do not address this aspect of the interaction between the parole system and the sentencing guidelines; this is not surprising, however, since the guidelines were intended to replace the old system and not to function together with it.[10] The question then is whether the district court may consider this when sentencing under the sentencing guidelines.

This is a question of first impression for this circuit, and we could find no other circuit decision on point. Since the guidelines do not address this pseudo double penalty, this case meets the criteria set out for departures.[11] However, if both sentences had been imposed under the parole system, the offender would have received this double penalty.

One of the principal reasons Congress adopted the sentencing guidelines was to achieve uniformity in sentencing.[12] Under the former system, the parole commission and the parole guidelines—not the announced sentence—in fact determined the period of confinement. *See* 28 C.F.R. §§ 2.12–2.20 (1988). *See also United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989) (arbitrariness of parole system rejected under guidelines). The initial confinement period determined by the parole board shortly after a prisoner's arrival is the functional equivalent of what the district court now does at the sentencing hearing under the Sentencing Guidelines. The principal feature which distinguishes the two systems is that now, with one exception,[13] the period of confinement announced by the court is the sentence the offender will serve. Arguably then, the parole board's ability to modify a confinement period represents the sort of arbitrariness rejected under the

**9.** *See supra* note 2.

**10.** Congress explicitly provided that the parole system was to remain in effect for those sentenced thereunder during the transition to the sentencing guidelines. *See* Sentencing Reform Act, Pub.L. No. 98–473, § 235(b)(4), 98 Stat. 1837 (1984); S.Rep. No. 98–225, *reprinted at* 1984 U.S.Code Cong. & Admin.News 3182, 3372 (legislative history to Pub.L. No. 98–473). *See also United States ex rel. D'Agostino v. Keohane,* 877 F.2d 1167, 1170–71 (2d Cir.1989). This does not alter our analysis, however, since we are not here engaged in an inquiry into whether the Parole Commission's extension was appropriate, but instead one into whether the district court may account for such an extension when imposing a sentence under the new guidelines.

**11.** This is the second type of departure contemplated by the guidelines which "remain unguided." These are the type which "may rest upon grounds referred to in Chapter 5, Part K (Departures), or on grounds not mentioned in the guidelines. While Chapter 5, Part K lists factors

that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive." U.S.S.G. ¶ 4(b) at 1.7.

**12.** *See, e.g., United States v. Scroggins,* 880 F.2d 1204, 1208 (11th Cir.1989) (discussing the guidelines as "creat[ing] a new system of sentencing based on a determinate term of incarceration"). Congress had three objectives in mind when it enacted the new sentencing law: (1) Honesty in sentencing; to be accomplished by requiring the offender to serve the sentence imposed by the court and not as determined by the parole commission; (2) Uniformity in sentencing; to be accomplished by requiring sentencing courts to treat similar criminal conduct alike; and (3) Proportionality in sentencing; to be accomplished by sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity. U.S.S.G. ¶ 3 at 1.2.

**13.** A prisoner may still earn good time credits. *See* 18 U.S.C.A. § 3624(b) (West Supp.1989).

Sentencing Guidelines.[14] Since the guidelines do not consider the parole eligibility extension in the sentencing calculation, we hold that it is permissible for a district court to depart from the guidelines to account for the Parole Commission's extension of a prisoner's parole range.

### C. *Punishment as a Deterrence.*

■ While there may be some debate as to whether punishment of a particular offender serves to deter future criminal activity by the offender and others, *See Prater v. United States Parole Commission,* 802 F.2d 948, 953 (7th Cir.1986) (expressing doubt that threat of punishment influenced offender's conduct in any way), that concern need not detain us here. For our purposes, that issue has been resolved by Congress. General deterrence is one of three primary goals of the determinate sentencing model. *Scroggins,* 880 F.2d at 1208. *See* 28 U.S.C.A. § 994(c)(6) (West Supp.1989) (requiring the Sentencing Commission to consider deterrent effect of the prescribed punishment on commission of the offense by others); 18 U.S.C.A. § 3553(a)(2)(B) (requiring courts to consider whether the sentence affords adequate deterrence to criminal conduct). The district court's focus on deterrence is particularly appropriate in this case since there are no walls at a minimum-security facility to deter an escape and it is the threat of subsequent punishment for escape that serves as a deterrent.

■ In addition to the above function, punishment is also intended to be a specific deterrent; that is, the sentence imposed should be adequate to deter this offender from committing crimes in the future. The question of what punishment is appropriate in a specific case is directly related to the likelihood that the particular offender will commit future crimes. Under the guidelines, this interrelationship exists because recidivism is an integral factor in a court's determination of whether an offender's

criminal history category as calculated in the PSR is appropriate. *See United States v. Jackson,* 883 F.2d 1007, 1009 (11th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 747, 107 L.Ed.2d 764 (1990) (upward departure warranted because offender's criminal history category did not accurately reflect the likelihood that the defendant would commit future crimes); *United States v. Campbell,* 888 F.2d 76, 78 (11th Cir.1989); *United States v. Dorsey,* 888 F.2d 79, 81 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990). While these cases illustrate the logic invoked in upward departure cases, the logic is very similar in downward departure cases. The Sentencing Commission has stated that "[t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or *the likelihood that the defendant will commit further crimes* ... and therefore [should] consider a downward departure from the guidelines." U.S.S.G. § 4A1.3 (Policy Statement). ·

In *United States v. Fayette,* 895 F.2d 1375, 1379–80 (11th Cir.1990), this court held that if a sentencing court determines that a defendant's criminal history score appears inadequately to reflect his or her past behavior, then it must follow the guided departure procedure outlined in U.S.S.G. § 4A1.3. This requires the sentencing judge to first, " 'determine which category best encompasses the defendant's prior history,' " and second, " 'use the corresponding sentencing range for that category to guide its departure.' " 895 F.2d at 1379 (quoting *United States v. Cervantes,* 878 F.2d 50, 53 (2nd Cir.1989)). In other words, the " 'Guidelines require sentencing courts first to consider upward adjustments of the criminal history category ... before a departure may be justified' " on the basis of an inadequate criminal history score. 895

**14.** In *Keohane,* 877 F.2d at 1172, the court considered and rejected a similar argument. However, there the appellant claimed that the policy behind the new determinate sentencing model should be used to circumscribe the Parole Com-

mission's discretion to assign parole dates. In contrast, here we are concerned with the actions of a district court which is subject to and acting in furtherance of the new policy.

F.2d at 1379 (quoting *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989)). In a later case, discussing *Lopez*, the Fifth Circuit concluded that the sentencing court had "erred in essentially bypassing the guidelines and in not considering the possible sentences under the next higher criminal history category." *United States v. Harvey*, 897 F.2d 1300, 1306 (5th Cir.1990). This approach is particularly appropriate in cases like *Fayette* and *Lopez*, where the sentencing courts' upward departures corresponded to changing the defendants' criminal history categories from I to VI and I to V, respectively. *Fayette*, 895 F.2d at 1378; *Lopez*, 871 F.2d at 515. Under the facts of these cases, if the district court does not follow the guided departure procedure outline above, a reviewing court cannot evaluate whether criminal history category III may have been more appropriate.

■ However, the facts of this case are radically different from either of the above cases. Given the magnitude of the departure in this case, the sentencing judge decreased the defendant's criminal history score by one increment. The judge clearly articulated his concern that the prescribed punishment was excessive as a deterrent; which is simply a different way of stating that the defendant's criminal history score over-represented the likelihood that he would recidivate. The government has no basis to complain since there is no possibility that an intermediate criminal history score was more appropriate. The defendant has no basis to complain as the statute, 18 U.S.C. § 3742(a), does not authorize an appeal on the ground that a favorable departure should have been more favorable. *United States v. Erves*, 880 F.2d 376, 381–82 (11th Cir.1989). While the district court did not explicitly state that it believed Weaver's criminal history category over-represented the likelihood that he would recidivate, his statements on the record support such an interpretation.

## III. REASONABLENESS OF THE DEPARTURE

■ Once we have determined that a departure is legally and factually justified,

we must then determine whether the direction and degree of the departure is reasonable. When the parole extension (8–16 months) is added to the seven-month consecutive sentence imposed for the escape, the resulting total additional time Weaver must serve is 15–23 months. This range is Weaver's total punishment for his crime of escape. The district court concluded that in light of the automatic imposition of a parole extension and the fact that his criminal history category over-represented the likelihood that he would commit future crimes, a sentence taken directly from that prescribed by the guidelines [15] would be excessive. The district court apparently intended for the imposed sentence, when added to the parole extension, to be close to that which the guidelines prescribe. The small difference between the actual total and the prescribed total represents a downward adjustment in criminal history category based on the court's conclusion that the prescribed category over-represented the likelihood that Weaver would recidivate.

■ Having extensively and perhaps excessively analyzed the numbers involved in this case, we reiterate that the guidelines were not intended to relegate the sentencing judge to the role of a scrivener whose only function is to tally the pluses and minuses prescribed in the guidelines and produce a bottom line sentence. As we have stated before:

"Sentencing under the guidelines is not [ ] an exact science. Justice cannot be meted out according to mathematical formulas. The universe of potential factors that might affect the seriousness of the given offense is too broad to be refined to a mechanistic approach. The sentencing guidelines are not intended to cover all contingencies or rigidly bind district judges. The guidelines do not impose the sentence, they provide a framework for the district court to provide a sentence."

*Crawford*, 883 F.2d at 966 (quoting *United States v. Mejia–Orosco*, 867 F.2d 216, 219

---

**15.** Weaver's guideline range was 18–24 months.

(5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)).

We conclude therefore, that the degree and direction of the district court's departure in this case was reasonable.

AFFIRMED.

HILL, Senior Circuit Judge, specially concurring:

I concur in the judgment of the court.

I write separately to dissociate myself from statements in the majority opinion to the effect that the guidelines do not adequately consider a prisoner's voluntary return to custody after 96 hours. U.S.S.G. § 2P1.1(b)(2). A conviction for escape and a stiff sentence for that crime seems to be the principal deterrence provided against escapes from minimum-security penal institutions. High walls, barbed wire, watch towers and high-powered rifles provide deterrence at more secure facilities. Reductions in the offense level of escape from prisons without walls must be sparingly given or it becomes necessary that these grounds be encircled with walls, fences and towers. It is to be recognized that one may impulsively "walk away" from an unwalled prison. A reduction in offense level for a return within 96 hours recognizes that such an impulse may not be as culpable as more deliberate escapes. If the impulse does not subside within 96 hours it may be assumed that the walk-away was a deliberate escape.

I agree that the guidelines do not adequately consider the effect of this offense on parole eligibility in a sentence which had been imposed under the pre-guidelines system and I take no issue with Part IIB. Deterrence is a reason and aim of sentencing. The district judge was authorized to measure the need for deterrence. U.S.S.G. § 4A1.3 (Policy Statement). I agree that, ultimately, the degree and direction of the district court's departure in this case was reasonable.