# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

## No. 95-8556
_____

## D. C. Docket No. 1:94-cv-2599-RLV

DARRYL W. WALDEN,

**Plaintiff-Appellant,**

versus

UNITED STATES PAROLE COMMISSION, PHIL
BURGEST, U. S. PROBATION OFFICER,

**Defendants-Appellees.**

_____

### Appeal from the United States District Court for the
### Northern District of Georgia
_____

## (June 12, 1997)

## Before BIRCH, Circuit Judge, HILL and FARRIS*, Senior Circuit Judges.

------------------------
*Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit,
sitting by designation.

**HILL, Senior Circuit Judge:**

Darryl W. Walden appeals the district court's dismissal of his "Instanter Petition for All Writs Act."  For the following reasons, we affirm.

## I.

Darryl W. Walden was convicted of armed robbery in 1973, and received a fifteen year sentence.  He was incarcerated and later transferred to a federal institution.  He was paroled in 1980.  In 1983, he was arrested in Virginia after a traffic stop during which drug paraphernalia was found in the car.  All charges against Walden were ultimately dismissed, but a parole violator warrant was issued.  After his return to custody, the Parole Commission (Commission) held a parole revocation hearing, and his parole was revoked.

While serving his parole violator term, Walden received two new federal sentences.[1]  The remainder of his original fifteen-year sentence, and the two federal sentences totalling eight years were aggregated into a sentence of fifteen years, four months and twenty-two days.

The day before Walden's mandatory release date of February 25, 1994, his probation officer recommended that the Commission impose a special drug aftercare condition on his probation.  The condition was imposed over his objection, and he was released.

In June of 1994, the probation officer submitted a violation report indicating that Walden had violated the conditions of his release by failing to

_____

[1] He received a three year consecutive term for assault on a federal correctional officer and a five year consecutive term for possession of a weapon at a federal correctional facility.

work regularly and to notify his probation officer of any change in employment and residence. The officer also reported that Walden had failed to participate in the drug aftercare program by missing appointments and failing to provide urine samples. In July, the officer requested a violator warrant be issued on the grounds that Walden had failed to comply with the drug aftercare program. The Commission issued a mandatory releasee violator warrant on July 29, 1994. On August 10, the violator warrant was executed and Walden was returned to custody.

Just prior to his return to custody, on August 1, 1994, Walden filed a *pro se* "Instanter Petition for All Writs Act," requesting, *inter alia*, that the district court (1) enjoin the Commission from any further supervision of him on the grounds he was being held beyond the full-term expiration of his sentence; (2) enjoin the revocation of his parole; and (3) reverse the Commission's decision to impose drug aftercare as a condition of his release. He also requested a court order permitting him to file a writ of habeas corpus sometime in the future.

The Magistrate Judge granted Walden permission to proceed *in forma pauperis* but denied without prejudice his request for leave to file a future petition for habeas corpus on the grounds the request was premature.

On November 7, 1994, he filed a motion to supplement his original petition to add a claim that the Commission lacked authority under the Sentencing Reform Act of 1984, Pub.L. 98-473 § 235(b)(4), to revoke or amend the conditions of his parole. He also filed an "Ex Parte Motion for Discovery

and Production," requesting that the respondents be ordered to produce certain documents and other personal property. Walden filed two other discovery and procedural motions. In April of 1995, the district court denied all of the pending motions and dismissed the petition as frivolous pursuant to 28 U.S.C. § 1915(d). Walden filed a timely notice of appeal.

After two continuances at his request, Walden's parole revocation hearing was held on June 27, 1995, and his parole was revoked. He received a fourteen-month parole violator term.

Walden was released again on October 9, 1995. The full-term expiration date of his sentence is November 28, 1998, with supervision to terminate on June 1, 1998.

We review the dismissal of Walden's petition for an abuse of discretion.[2] *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990).

## II.

Walden claims that the Parole Commission had no authority to revoke his parole because the plain language of Section 235(b)(4) of the Sentencing Reform Act (SRA or the Act) transferred authority to revoke or amend the conditions of his parole from the Commission to the district court. Pub.L. 98-473, Title II, c. II § 235(b)(4), 98 Stat. 1837, 1987 (1984) (set out as a

---

[2] We have reviewed the other issues Walden raises on appeal, and find no reversible error.

note to 18 U.S.C. §3551 (Chapter 227) (1985)).  This appears to be an issue of first impression; we find no reported case interpreting this SRA provision.

The SRA provides for the total revamping of the sentencing procedures in the federal judicial system. *See United States v. Weaver*, 920 F.2d 1570, 1575 (11th Cir. 1991).  It replaces a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole. *See United States ex rel D'Agostino v. Keohane*, 877 F.2d 1167, 1169 n.2 (3rd Cir. 1989). Inasmuch as there will be no parole for those convicted after the effective date of the SRA, the Act abolishes the Parole Commission, and repeals most of the pre-existing statutory framework governing parole of federal prisoners.  Pub.L. 98-473, §§ 218(a)(5), 235, 98 Stat. at 2027, 2031. *See Strange v. U.S. Parole Comm'n*, 875 F.2d 760, 761 (9th Cir. 1989); *D'Agostino*, 877 F.2d at 1169 ("It is well settled that the Sentencing Reform Act abolished the United States Parole Commission and repealed the federal parole statutes.")

Section 235 of the Act, however, "saves" the Parole Commission and the federal parole statutes for a period of time during which the transition to the new system will occur.[3]  Section 235(b)(1) provides that 18 U.S.C. Chapter 311, §§ 4201-4218, which creates the Parole Commission and contains the parole law, "remains in effect for five years after the effective date [of the Act]", or November 1, 1992.  98 Stat. at 2027, 2032-33. *See Farese v. Story*, 823 F.2d 975, 976 (6th Cir. 1987).  The Parole Commission and all laws relating to parole in

---

[3]  This section is known as the "Savings Provision of Sentencing Reform Act of 1984."  Pub.L. 98-473 §§ 211 to 239.

5

existence on October 31, 1987,[4] therefore, were to continue in effect until November 1, 1997.  *Id.  See also* S.Rep. No. 98-225, *reprinted at* 1984 U.S.Code Cong. & Admin.News 3182, 3372 (legislative history to Pub.L. 98-473).  We have previously held that, "Congress explicitly provided that the parole *system* was to remain in effect for those sentenced thereunder during the transition to the sentencing guidelines."  *Weaver*, 920 F.2d at 1575 n.10 (emphasis added).

The Parole Commission's authority to modify the conditions of or revoke parole is part of this system.  *See* 18 U.S.C. § 4203(b)(3).  The Commission will "wind-up" its duties by "discharg[ing] its final responsibilities toward those sentenced under the preexisting law."  *Romano v. Luther*, 816 F.2d 832, 839 (2d Cir. 1987).

Section 235(b) as enacted provided for a five-year phase-out of the parole system.  At the end of that time, the Act provides that:

> (4) Notwithstanding the other provisions of this subsection, *all laws in effect on the day before the effective date of this Act pertaining to an individual who is*
>> (B)(i) *subject to supervision on the day before the expiration of the five-year period following the effective date of this Act;* or
>> (ii) released on a date set pursuant to paragraph (3);
>
> including laws pertaining to terms and conditions of release, revocation of release, provision of counsel, and payment of transportation costs, in accord with the Rules of Criminal Procedures, *shall remain in effect as to the individual until the expiration of his sentence,*

---

[4] This is the day before the SRA became effective.

*except that the district court shall determine whether*
*release should be revoked or the conditions of release*
*amended for violation of a condition of release.*

**98 Stat. at 2032-33 (emphasis added).**

**The original five-year transition period would have expired on October 31, 1992.[5] This section of the SRA has been amended twice. In 1990, the five-year transition period was extended to ten years, Pub.L. 101-650, Title III, § 316, Dec. 1, 1990, 104 Stat. 5115 (1990); and in 1996, the ten-year period was extended to fifteen years. Pub.L. 104-232, §§ 1-3 Oct. 2, 1996, 110 Stat. 3055 (1996). Accordingly, the transition period does not now expire until October 31, 2002.[6]**

**At the end of this time, parole and the Parole Commission will cease to exist. For those still subject to supervision on the day before the Parole Commission ceases to exist, Section 235(b)(4) provides that they remain subject to all the then-repealed parole laws until their sentences expire. Since the Parole Commission will no longer exist, however, Section 235(b)(4) provides that the district court will assume the authority to revoke or modify the conditions of parole.**

---

[5] The SRA's effective date was postponed by amendment from November 1, 1986 to November 1, 1987. Sentencing Reform Amendments Act of 1985, Pub.L. 99-217, § 4, 99 Stat. 1728 (1985).

[6] The 1996 amendment is entitled the "Parole Commission Phaseout Act of 1996." Pub.L. 104-232, Oct. 2, 1996; 110 Stat. 3055 (1996). Section 2 of those amendments is entitled the "Extension of the Parole Commission." The amendment states that it is an "Act to provide for the extension of the Parole Commission to oversee cases of prisoners sentenced under prior law." *Id.*

Walden's argument that Section 235(b)(4) transferred authority over him to the district court immediately upon his release in 1994 is without merit.[7] Although the language of the section may appear to do so if read in isolation from the rest of Section 235, the intention and meaning of Section 235(b) is quite clear in the context of the rest of the "savings provision."[8]

Section 235(b)(1) retains the Parole Commission and provides that it continue to exercise authority over all parolees until its demise at the end of the phase-out period. Section 235(b)(4) retains the prior laws related to parole for the phase-out period in order to deal with those released but still under supervision. *Cf. D'Agostino*, 877 F.2d at 1171 n. 5. The drafters of the SRA intended that:

> [t]he Parole Commission and current law
> provisions were to remain in effect for five

---

[7] Walden will be subject to supervision until June 1, 1998. At the time of his parole in 1994, and his revocation in 1995, the wind-up period was ten years and would have ended on October 31, 1997. As he will be subject to supervision on October 31, 1997, Section 235(b)(4) clearly applied to him at the time of the revocation.

On October 2, 1996, the wind-up period was extended to fifteen years. Walden, therefore, will not be subject to supervision on the *"day before the expiration of the [fifteen-year] period following the effective date of this Act,"* which will now be October 31, 2002. Briefs in this appeal were filed on August 16, 1996, before the October 1996 amendments to the SRA. Accordingly, the issue of the applicability of these amendments to Walden's claim was neither briefed nor argued, and we do not consider it in deciding this case.

[8] "This is an unsightly literary blemish, but not a grave legal infirmity. In school the composition would not pass, but it may be tolerated in the court-house. The meaning is clear, though the verbal inaccuracy is glaring." *Dickson v. State,* 62 Ga. 583, 590 (1879).

> years from the effective date of the title. During this five year period, the Commission was authorized to deal with sentences imposed under the pre-Act practices and the lengths of sentences, parole and good time statutes would remain in effect as to any individual sentenced before the new Act.

*Id.* at 1171 (citing 1984 U.S.Code Cong. & Admin.News at 3372). Only *after* the expiration of the wind-up period, does the Parole Commission cease to exist. Only then is the authority over any remaining parolees transferred to the district court.[9]

## III. CONCLUSION

The ten-year (much less the fifteen-year) transition period at the end of which the Parole Commission will cease to exist has not expired. The Parole Commission continues to exist with the authority to modify or revoke parole. This authority will not transfer to the district court until the day *after* the expiration of the phaseout period and the complete dissolution of the Parole Commission. Accordingly, the district court did not abuse its discretion in dismissing Walden's petition, and the judgment of the district court is AFFIRMED.

---

[9] Although we have not decided the applicability to Walden of the 1996 extension of the wind-up period to fifteen years, the Parole Commission continued to exercise authority at the time of Walden's revocation under the 1990 SRA amendments which extended the life of the Commission for five more years, or until October 31, 1997.