United States Court of Appeals,

Eleventh Circuit.

No. 94-6285

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Alphonzo Leon WILLIAMS, a/k/a Hoss, a/k/a Alphonso Leon Williams, a/k/a Alfonzo Leon Williams, a/k/a Alfonso Leon Williams, a/k/a Fred Bell, Defendant-Appellant.

May 9, 1995.

Appeal from the United States District Court for the Northern District of Alabama. (No. CR-93-AR-248-S), William M. Acker, Jr., Judge.

Before KRAVITCH, HATCHETT and BARKETT, Circuit Judges.

HATCHETT, Circuit Judge:

Alphonzo Leon Williams appeals his conviction under the federal carjacking statute and his twenty-five-year sentence. We affirm.

FACTS

On April 28, 1993, Scott Whitehead was driving his pickup truck in Birmingham, Alabama, with Tim Donaldson sitting in the passenger seat. After noticing a car following them, Donaldson loaded a pistol that he had previously placed underneath his seat.

Eventually, Whitehead stopped at an intersection. At this point, the appellant, Williams, exited the tailing vehicle, and approached. When Williams reached Whitehead's door, he pointed a gun inside the truck. In response, Donaldson, from his position in the passenger seat, began shooting across Whitehead and through the driver's window, hitting Williams. One of Donaldson's shots also

struck Whitehead in the side of the head.

When Williams began to retreat, Donaldson noticed that Whitehead was unconscious. He then pushed Whitehead against the driver's door and began to operate the truck. As Donaldson started to speed away, Williams fired several shots.

Approximately twenty-four hours later, Whitehead died as a result of the gunshot wound.

PROCEDURAL HISTORY

On October 1, 1993, a federal grand jury in the Northern District of Alabama returned an indictment charging Williams with one count of attempted carjacking in violation of 18 U.S.C. §§ 2119 and 2.[1] Before trial, Williams filed a motion to exclude any evidence concerning Whitehead's death. A magistrate judge recommended that Williams's motion be denied, explaining that the carjacking statute "makes the death relevant because it provides for heightened punishment if a death "results' from a carjacking or attempted carjacking.... It is not merely a question of sentencing, but an element of the charged offense itself."

Due to this comment in the magistrate judge's report and recommendation, the government superseded the indictment so as to charge Williams with a carjacking "resulting in the death of Richard "Scott' Whitehead." Williams then filed a motion to strike this added language in the indictment, or alternatively, to bifurcate the trial into a guilt phase and a penalty phase.

In granting Williams's request for a bifurcated trial, the

---

[1]A superseding indictment charged Williams with a second count of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

district court disagreed with the magistrate judge, and found that death is only a sentencing enhancement feature, not an element of the carjacking statute. The district court, however, agreed with the magistrate judge that evidence of Whitehead's death would be admissible during the guilt phase of the trial. Thus, during the guilt phase, the government elicited testimony from Donaldson, over Williams's objection, that Whitehead was physically located "in the cemetery."

After three days of trial, the guilt phase concluded on January 5, 1994. Before sending the indictment to the jurors for their deliberations, the district court redacted the words "resulting in the death of Richard "Scott' Whitehead" from the carjacking count. The next day, the jury found Williams guilty of carjacking.[2] The second phase of the trial then commenced. A forensic pathologist, who testified for the government about the cause of Whitehead's death, was the only witness during the penalty phase. After the court charged the jury, it found that a death did not result from Williams's violation of the carjacking statute.

On March 21, 1994, the district court held a sentencing hearing. Applying the United States Sentencing Guidelines to Williams's convictions, the presentence investigation report (PSR) calculated a range of 140 to 175 months imprisonment based on a total offense level of twenty-eight and a criminal history category of VI. In arriving at the total offense level, the PSR added seven levels pursuant to U.S.S.G. § 2B3.1(b)(2)(A) because Williams discharged a firearm during the carjacking. Williams objected to

---

[2]The jury also convicted Williams on the firearm count.

this increase, arguing that he only fired shots straight into the air after Donaldson made his escape. Although the district court recognized that Williams may have fired the shots into the air, it rejected his contention, and accepted the increase. Also over Williams's objection, the district court granted the government's motion for an upward departure pursuant to U.S.S.G. § 5K2.1, explaining that "by a preponderance of the evidence, and using that standard rather than the much higher standard that the jury was operating under, that under the terms of 5K2.1 death did result." Accordingly, the district court increased Williams's total offense level to thirty-four, which placed him in a guideline range of 262 to 327 months. The district court then sentenced Williams to 300 months (twenty-five years) in prison.[3]

## CONTENTIONS

Williams contends that Congress did not have the authority to enact the federal carjacking statute under the Commerce Clause, and even if it did, the statute is unconstitutionally vague. He also argues that the district court abused its discretion in allowing evidence of Whitehead's death during the guilt phase of his trial because it was irrelevant and highly prejudicial. Finally, Williams contests his sentence, arguing that he did not fire his gun during the commission of the carjacking; therefore, the district court erred in increasing his offense level under section 2B3.1(b)(2)(A); he also claims that the upward departure, pursuant

---

[3]Because the firearm count was grouped with the carjacking count pursuant to U.S.S.G. § 3D1.2(c), the district court totaled the statutory maximum penalties for the carjacking (fifteen years) and firearm (ten years) convictions to comprise the twenty-five-year sentence.

to section 5K2.1, was erroneous because the jury found that Whitehead's death did not result from his carjacking violation.

With respect to Williams's constitutional challenges, the government responds that courts throughout the country have consistently rejected his Commerce Clause claim; further, the government asserts that the carjacking statute is not unconstitutionally vague because it clearly proscribes patently criminal conduct. In response to Williams's evidentiary claim, the government argues that Whitehead's death was relevant, and that such evidence did not substantially prejudice the jury. Finally, with respect to the sentence, the government contends that Williams fired several shots as Donaldson was driving away, therefore, the seven-level increase pursuant to section 2B3.1(b)(2)(A) was justified; the government also contends that the district court's upward departure pursuant to section 5K2.1 was proper because Whitehead died as a result of the carjacking.

## ISSUES

This appeal requires us to decide whether: (1) Congress possessed the authority, under the Commerce Clause, to enact the federal carjacking statute; (2) the carjacking statute is unconstitutionally vague; (3) the district court abused its discretion in allowing evidence of Whitehead's death; (4) the district court properly applied a seven-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(A); and (5) the district court erred in granting an upward departure pursuant to U.S.S.G. § 5K2.1.

## DISCUSSION

In 1992, Congress enacted the federal carjacking statute. The

original version provided:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> > (1) be fined under this title or imprisoned not more than 15 years, or both,
> >
> > (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
> >
> > (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119 (1992). This version of the statute was in effect when the grand jury indicted Williams and when the trial jury convicted him. On September 13, 1994, Congress amended the statute. As a result of the amendments, the statute now reads:

> Whoever, *with the intent to cause death or serious bodily harm* takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> > (1) be fined under this title or imprisoned not more than 15 years, or both,
> >
> > (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
> >
> > (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, *or sentenced to death.*

18 U.S.C. § 2119 (1994) (emphasis added). Thus, as the emphasized portions indicate, the 1994 amendments changed the intent requirement, and added the possibility of the death penalty. The overall structure of the carjacking statute, however, remains intact.

A. Commerce Clause

Williams argues that Congress exceeded its power under the Commerce Clause in enacting the federal carjacking statute. While this is an issue of first impression for this court, several of our sister circuits have been presented with identical challenges to section 2119, and all have held that its creation was a valid exercise of congressional authority under the Commerce Clause. *See United States v. Martinez,* 49 F.3d 1398, 1400-01 (9th Cir.1995); *United States v. Bell,* 46 F.3d 442, 444-45 (5th Cir.1995); *United States v. Overstreet,* 40 F.3d 1090, 1093 (10th Cir.1994); *United States v. Harris,* 25 F.3d 1275, 1280 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994); *United States v. Johnson,* 22 F.3d 106, 108-09 (6th Cir.1994). For the reasons stated in those opinions, we agree that, under current Commerce Clause doctrine, the carjacking statute is constitutional.

B. Vagueness

Williams presents another constitutional question of first impression for this court. He argues that the federal carjacking statute is unconstitutionally vague. The void-for-vagueness doctrine places two requirements on criminal statutes. First, it requires a statute to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Interestingly, Williams does not invoke this requirement to challenge the main paragraph of section 2119, in which carjacking is defined. Even if he did, such an argument would fail because "[t]he terms used are clear and easy to understand, and reasonably define the prohibited behavior."

*Martinez,* 49 F.3d at 1403 (rejecting a vagueness challenge to the carjacking statute).

Instead, Williams invokes the second prong of the void-for-vagueness doctrine, which requires criminal statutes to be defined "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858. Williams contends that section 2119 is unclear as to whether subparagraphs (2) and (3), which provide for enhanced punishments if serious bodily injury or death result, are elements of the carjacking offense. He asserts that if some courts treat the subparagraphs as elements, while other courts merely utilize them as sentencing enhancers, "arbitrary and discriminatory enforcement" of the statute may result. In support of his argument, Williams points to the conflicting views of the magistrate judge and the district court.

Despite Williams's contentions and the confusion in the district court, we find that section 2119 clearly indicates Congress's intent that subparagraphs (2) and (3) be treated as sentencing enhancement features, and not elements of the offense. In arriving at this conclusion, we refer, as we must, to the language and structure of the statute. *See Garrett v. United States,* 471 U.S. 773, 787, 105 S.Ct. 2407, 2415-16, 85 L.Ed.2d 764 (1985). The first paragraph of section 2119 defines carjacking and ends in the word "shall," followed with a dash. Then, in three, separate, numbered subparagraphs, the statute describes different degrees of punishment. This format clearly signifies that the first main paragraph of the statute contains the elements of the

carjacking offense, and the three numbered subparagraphs are sentencing provisions.

Furthermore, while Williams fears arbitrary enforcement, we note that similar provisions in other statutes have consistently been interpreted as enhancers, not elements. For example, similar provisions in 18 U.S.C. §§ 241 and 242, federal civil rights crimes, have been interpreted as sentencing enhancers. *See Catala Fonfreias v. United States,* 951 F.2d 423, 426 (1st Cir.1991), *cert. denied,* --- U.S. ----, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992). The First Circuit explained:

> The natural reading of the text, given the placement of the "death resulting" language within the sentencing provisions of both statutes, is that Congress intended to add "death resulting" as a factor that would justify an enhanced sentence. In other words, the victim's death is not an *element* of either offense, but simply an aggravating circumstance which gives the district court the authority to impose harsher punishment.

*Catala Fonfreias,* 951 F.2d at 426. Likewise, the Eighth Circuit has construed the "if death results" provision in 18 U.S.C. § 844(i), the federal arson statute, as a sentencing enhancer. *See United States v. Ryan,* 9 F.3d 660, 667-69 (8th Cir.1993), *modified on other grounds,* 41 F.3d 361 (8th Cir.1994) (en banc).[4] Finally, the Fourth Circuit has interpreted the "if death or serious bodily injury results" language of 21 U.S.C. § 841(b)(1)(C), the commonly used narcotics statute, as a sentencing enhancement provision. *See*

---

[4]We recognize that when listing the elements of a section 844(i) offense, the Fifth Circuit has included the "death results" provision. *See United States v. Triplett,* 922 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991). The issue, however, of whether the provision is a sentencing enhancer, as opposed to an element of the offense, was not addressed, and therefore, we do not find *Triplett* to be contrary authority.

*United States v. Patterson,* 38 F.3d 139, 143-44 (4th Cir.1994).

In sum, section 2119 is not unconstitutionally vague because its plain language and structure clearly indicate that the "if serious bodily injury results" language of subparagraph (2) and the "if death results" language of subparagraph (3) are sentencing enhancement provisions. The fact that the statute "expose[s] defendants to enhanced penalties based on legally significant factors does not make the statute void for vagueness." *United States v. Easter,* 981 F.2d 1549, 1557 (10th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993).[5]

C. The "Cemetery" Testimony

During the guilt phase of the trial, the government presented evidence showing that Donaldson shot Whitehead rendering him unconscious. Williams does not dispute the admissibility of this evidence. The district court, however, also allowed the government to elicit that Whitehead was physically located "in the cemetery" at the time of the trial. Williams contends that this particular evidence was irrelevant and improperly prejudiced the jury.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

---

[5]To avoid any future confusion, we reiterate that subparagraphs (2) and (3) create sentencing questions for the district court. Thus, a bifurcated trial, such as the one conducted in this case, is not necessary. We note, however, that due to the 1994 amendments, the district court is required to send to the jury the question of whether death resulted in one instance—when the government seeks capital punishment. *See* 18 U.S.C. § 3593. In such a case, the jury must determine whether death resulted beyond a reasonable doubt. *See* 18 U.S.C. § 3591(a)(2).

without the evidence."  Fed.R.Evid. 401.  In a criminal trial, issues of consequence generally consist of "the elements of the offenses charged and the relevant defenses (if any) raised to defeat criminal liability."  *United States v. Hall,* 653 F.2d 1002, 1005 (5th Cir.1981).[6]  "[R]elevant evidence is admissible," but "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed.R.Evid. 402 and 403.

When considering these evidentiary principles, we must be mindful that "[t]he trial court is vested with broad discretion in ruling upon the relevancy and admissibility of evidence."  *United States v. Anderson,* 872 F.2d 1508, 1515 (11th Cir.), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 566, 107 L.Ed.2d 560 (1989).  Thus, under the abuse of discretion standard, "there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call."  *In re Rasbury,* 24 F.3d 159, 168 (11th Cir.1994).

Had we been presented with this question *de novo,* we would have excluded the "cemetery" testimony because, as we have already stated, Whitehead's subsequent death was irrelevant to the elements of the carjacking offense.  Nonetheless, we believe that the decision to admit the testimony as relevant evidence, which was not overly prejudicial pursuant to Rule 403, was within the district court's "range of choice, although perhaps not by a wide margin."  *In re Rasbury,* 24 F.3d at 168-69;  *cf. United States v. Accetturo,*

---

[6]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the Fifth Circuit rendered prior to October 1, 1981.

966 F.2d 631, 637 (11th Cir.1992) ("The fact that [the witness] had died was relevant to explain the fact that [the witness] did not testify. Had the jury not been told, they might well have incorrectly concluded that [the witness] was incarcerated or was afraid to testify, fearing the impeaching cross-examination that the defense obviously would have mounted."), *cert. denied,* --- U.S. ----, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993).

Finally, and perhaps most importantly, even if the district court had abused its discretion, the admission of the single "cemetery" comment did not have a "substantial influence on the outcome, and sufficient evidence supports the jury's verdict." *United States v. Christopher,* 923 F.2d 1545, 1552 (11th Cir.1991); *see also United States v. Eyster,* 948 F.2d 1196, 1212 (11th Cir.1991) (admission of irrelevant photograph of a dead body not reversible error).

D. U.S.S.G. § 2B3.1(b)(2)(A)

The robbery guideline provides the base offense level for carjacking, and is found at section 2B3.1(a). Section 2B3.1(b) lists several specific offense characteristics for robbery offenses, including a seven-level increase "[i]f a firearm was discharged." U.S.S.G. § 2B3.1(b)(2)(A). Williams objected to the application of this offense characteristic, arguing that he did not fire his gun until after Donaldson began driving away; therefore, he only fired after the commission of the carjacking. Initially, the district court found that the offense level increase was proper based on these shots, thereby rejecting Williams's attempt to separate them from the offense. Later, in response to Williams's

request for a specific finding, the district court reasoned that Williams drew his firearm, which then caused Donaldson to discharge his firearm during the commission of the carjacking.

In Sentencing Guidelines cases, we review the district court's findings of fact for clear error and its application of law to those facts *de novo. See United States v. Salemi,* 26 F.3d 1084, 1086 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 612, 130 L.Ed.2d 521 (1994). The district court found that Donaldson fired his firearm as Williams was committing the carjacking, and that seconds later, Williams fired shots as Donaldson was driving away. These findings of fact are not clearly erroneous; indeed, both parties agree that this is what transpired. We, therefore, must apply the guidelines to these facts *de novo.*

Neither section 2B3.1(b)(2)(A), nor its commentary, precisely specify who must discharge the firearm or when it must be fired. Specific offense characteristics, however, shall be determined on the basis of "all acts and omissions committed [or] induced ... that occurred during the commission of the offense ... or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). We read this language as supporting both of the district court's reasons for applying the offense level increase.

First, we find that Williams discharged his firearm "during the commission of the offense." U.S.S.G. § 1B1.3(a)(1). Crimes involving "robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such

flight." *United States v. Muhammad,* 948 F.2d 1449, 1456 (6th Cir.1991) (affirming increase pursuant to section 2B3.1(b)), *cert. denied,* 502 U.S. 1119, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). Thus, although Williams argues otherwise, the commission of the carjacking did not magically cease the moment he backed away from Whitehead's truck; therefore, the shots he fired were discharged during the commission of the carjacking. Furthermore, we also find that Williams discharged his weapon in an effort "to avoid detection or responsibility." U.S.S.G. § 1B1.3(a)(1). In firing his weapon, in any direction, Williams made certain that Donaldson continued to drive away, so that he could then make a clean departure from the scene of the crime.

Finally, we also agree with the district court's second explanation for the increase. When Williams attempted the carjacking with his weapon drawn, he "induced" Donaldson to fire his weapon; thus, Donaldson's act of shooting is attributable to Williams for purposes of the offense level increase. U.S.S.G. § 1B1.3(a)(1)(A).

E. U.S.S.G. § 5K2.1 Upward Departure

In his final assignment of error, Williams contends that the district court erred in upwardly departing from the guidelines pursuant to section 5K2.1. That section provides: "If death resulted, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.1. We review the district court's decision to depart from the guidelines in three parts. *See United States v. Huang,* 977 F.2d 540, 544 (11th Cir.1992).

"First, we review *de novo* the district court's ruling that the

guidelines did not adequately consider a particular factor in establishing the base offense level." *Huang,* 977 F.2d at 544. Williams does not contest the upward departure under this prong of the analysis. Indeed, while the guideline establishing the base offense level for carjacking does consider life-threatening bodily injury, it fails to take into account death.[7] Thus, the district court properly looked to section 5K2.1.

"Second, we must review for clear error the factual findings supporting the departure." *Huang,* 977 F.2d at 544. Williams contends that he could not foresee that Donaldson would accidentally shoot Whitehead; therefore, the district court erred in finding that Whitehead's death resulted from the carjacking. We, however, agree with the Second and the Seventh Circuits that, when determining whether a death "resulted" from the offense for purposes of section 5K2.1, a factual finding "that death was intentionally or knowingly risked" is sufficient. *United States v. White,* 979 F.2d 539, 545 (7th Cir.1992); *see also United States v. Rivalta,* 892 F.2d 223, 232 (2d Cir.1989). In approaching the truck with a weapon, Williams knowingly risked the lives of its occupants; he " "put into motion' a chain of events that contained an "inevitable tragic result.' " *White,* 979 F.2d at 545. Thus, we conclude that the district court's finding that a death resulted

---

[7]Section 2B3.1(b)(3)(C) adds six levels if a victim sustained a permanent or life-threatening bodily injury. Had Whitehead survived his injury, however, the six-level increase would not have been allowed because a seven-level increase for the firearm discharge had already been added, and the cumulative adjustment for these two factors cannot exceed eleven levels. *See* U.S.S.G. § 2B3.1(b)(3). In capping the offense level adjustment at eleven, we believe section 2B3.1 failed to consider resulting death.

from the carjacking was not clearly erroneous.

"Finally, we review the reasonableness of the district court's departure given the legal and factual posture of the case." *Huang,* 977 F.2d at 544. Williams argues that an upward departure was unreasonable given the legal posture of his case. Specifically, he contends that his acquittal at the penalty phase of the trial should have prevented the district court from departing on the basis that a death resulted. Williams, however, fails to recognize that "[a]cquitted conduct may be considered by a sentencing court because a verdict of acquittal demonstrates a lack of proof sufficient to meet a beyond-a-reasonable-doubt standard—a standard of proof higher than that required for consideration of relevant conduct at sentencing." *United States v. Averi,* 922 F.2d 765, 766 (11th Cir.1991). Thus, his contention fails, and we conclude that the district court's departure was reasonable in all respects.

## CONCLUSION

For the foregoing reasons, we affirm Williams's carjacking conviction and his twenty-five-year sentence.[8]

AFFIRMED.

---

[8]Defense counsel's motion to withdraw is denied.