[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13165

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAVARUS MCKINNEY,
a.k.a Jody,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:21-cr-00139-RSB-CLR-1

_____

Before JORDAN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

After a jury trial, Javarus McKinney appeals his 130-month prison sentence for conspiring to distribute and distributing fentanyl. Although the jury's verdict reflects that death did not result from the drug conspiracy, the district court at sentencing concluded otherwise, applying an eight-level upward death departure under U.S.S.G. § 5K2.1. In the court's view, a preponderance of the evidence showed that death resulted from conduct in furtherance of the conspiracy. McKinney appeals the § 5K2.1 departure on multiple grounds, contending that he cannot be held responsible for the death at issue. After careful review, we reject McKinney's arguments and affirm his sentence.

## I.

A four-count superseding indictment returned in February 2023 charged McKinney with distribution of fentanyl resulting in death. Count One alleged that, "at least as early as July 2020 continuing until February 2021," McKinney conspired to possess with intent to distribute and to distribute fentanyl, and that death resulted from the use of such substance. Count Two charged that, in August 2020, McKinney distributed fentanyl, aided and abetted by codefendant Darien Cothern, and death resulted. The other two counts charged possession with intent to distribute fentanyl in February 2021 (Count Three), within 1,000 feet of a school (Count Four). McKinney entered a not guilty plea and went to trial.

The trial evidence showed the following.  On the afternoon of August 12, 2020, 25-year-old Sawyer Duckworth was found dead of drowning in a residential pool.  Testing revealed the presence of fentanyl in his system, and the medical examiner testified that the fentanyl "directly led to the drowning and the death."

Earlier that same day, Duckworth had bought counterfeit oxycodone pills containing fentanyl from Cothern, who had obtained them from McKinney.  Cothern regularly resold pills he obtained from McKinney during that period, specifically July and August of 2020.  Then, on February 4, 2021, nearly seven months later, McKinney sold oxycodone pills containing fentanyl to Cothern, who was cooperating with the police, and a search of McKinney's residence uncovered additional pills containing fentanyl.

The jury returned a verdict finding McKinney guilty in part and not guilty in part.  For Count One's conspiracy charge, the verdict was rendered as follows:

1.  We, the Jury, find the Defendant Javarus McKinney

☐ Not Guilty       ☒ Guilty

as charged in Count One of the Indictment.

[. . .]

2.  We, the Jury, having found Defendant guilty of the offense charged in Count One, further find with respect to the conspiracy as charged that . . . :

☒      Death did not result from the use of such
        substance, the distribution of which was
        the object of the conspiracy

☐      Death did result from the use of such sub-
        stance, the distribution of which was the
        object of the conspiracy.

On the remaining counts, the jury found McKinney not guilty of
Count Two, relating to the distribution of fentanyl and death in
August 2020, but guilty of Counts Three and Four, for selling fen-
tanyl in February 2021 within 1,000 feet of a school.

Before sentencing, a probation officer prepared McKinney's
presentence investigation report ("PSR") and calculated his recom-
mended guideline range.  Notably, in calculating a recommended
range of 63 to 78 months, the probation officer refused the govern-
ment's requests to apply a death enhancement under the offense
guideline, U.S.S.G. § 2D1.1(a), citing the jury's verdict on Counts
One and Two.  The government ultimately withdrew its objection
to the death enhancement under § 2D1.1(a), and instead argued
that the district court should hold McKinney accountable for Duck-
worth's death by applying an "upward departure and/or variance"
under U.S.S.G. § 5K2.1 and 18 U.S.C. § 3553(a).  McKinney re-
sponded that applying any death-based enhancement would con-
tradict the jury's findings.

Ultimately, at sentencing, the district court ruled that an up-
ward departure under § 5K2.1 was warranted.  After hearing argu-
ment from the parties and reviewing trial testimony, the court

found that the evidence established "that death was caused by, that death resulted from relevant conduct of the defendant," with respect to the conspiracy charge in Count One. Noting the jury's finding that McKinney and Cothern "had been engaging in a drug conspiracy together for quite some time," and that McKinney had been providing drugs to Cothern, the court found that the August 2020 "sale of drugs was all part of that conspiracy, and it was certainly foreseeable to [McKinney] that [Cothern] would sell the drugs, and it's foreseeable to [McKinney] that someone would die, or would overdose from the ingestion of those drugs."

The district court found that, before an upward departure under § 5K2.1, McKinney's offense level was 22 and his criminal history category was IV. It then applied the § 5K2.1 departure by adding eight levels to McKinney's offense level, resulting in a revised offense level of 30, and—looking to an upcoming retroactive amendment to the Guidelines—adjusted his criminal-history category downward to III, such that his revised guideline range was 121 to 151 months' confinement.

The district court sentenced McKinney to concurrent terms of 130 months of imprisonment. Explaining its sentence, the court stated,

> [W]e've had a lot of discussion about the guidelines in this case, but regardless of what the guidelines said, this is the appropriate sentence for this case. It's a very significant sentence. It's a serious sentence, but it's not nearly the high level of sentence that the

> defendant could have gotten. It's not as low as I'm sure the defense would have requested. It's somewhere in the middle, and it's the appropriate sentence based on the totality of the circumstances of this case, particularly those Section 3553(a) factors, and this is the sentence I would have given regardless of the guidelines calculations.

The court stated that it had considered the nature and circumstances of the offense, and how it "can't be overstated how serious [McKinney's] conduct was," but that it had "tempered" its sentence based on McKinney's "true remorse" in his allocution. Nevertheless, it found the sentence was appropriate knowing that McKinney had continued to distribute pills containing fentanyl after Duckworth's death, finding the conduct "alarming," "disturbing," and needing to be "deterred," since prior state sentences had not helped McKinney to "wake up." The court also cited a need to "protect the public from this awful drug." McKinney appeals.

## II.

At sentencing, we review the district court's interpretation and application of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Dubois*, 94 F.4th 1284, 1291 (11th Cir. 2024); *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017). We review the court's decision to grant an upward departure for an abuse of discretion. *United States v. Flanders*, 752 F.3d 1317, 1341 (11th Cir. 2014).

## III.

McKinney raises three main arguments concerning the death departure under § 5K2.1. First, he argues that the district court clearly erred by making a finding at sentencing—that he was responsible for Duckworth's death—that was affirmatively rejected by the jury at trial. Second, he contends that the court misapplied § 5K2.1 by failing to find that he intentionally or knowingly risked death in his conduct. And third, McKinney maintains that he cannot be held responsible for Duckworth's death because the jury's verdict and inquiry during deliberation reflect its determination that he did not join the conspiracy before February 2021.[1]

The district court may depart above the ordinary guideline range based on an aggravating factor that was not adequately accounted for in determining that range. U.S.S.G. § 5K2.0(a)(1)(A), (2). As relevant here, "[i]f death resulted, the court may increase the sentence above the authorized guideline range." *Id.* § 5K2.1; *see United States v. Sweeting*, 933 F.2d 962, 966 (11th Cir. 1991). The government bears the burden of presenting sufficient and reliable evidence to establish the facts necessary to support an upward departure by a preponderance of the evidence. *United States v. Washington*, 714 F.3d 1358, 1360 (11th Cir. 2013).

---

[1] We decline to consider an additional argument, raised for the first time in McKinney's reply brief, that no departure was authorized because the government failed to identify a proper aggravating factor that was not accounted for in the original guideline range. *See United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015) (holding that a party "abandon[s] [an] issue by failing to develop any argument on it in his opening brief").

Under our precedent, however, "we need not review a sentencing issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022) (cleaned up). Our rationale for this policy is to avoid pointless reversals. *Id.* We have explained that it would not make sense "to set aside a reasonable sentence and send the case back to the district court because of an error in calculating the Sentencing Guidelines range since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *Id.* (citing *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006)).

When a district court states that its choice of sentence "would not have changed even with a different guideline calculation—we assume there was an error, reduce the guideline range according to the way the defendant argued, and analyze whether the sentence would be substantively reasonable under that guideline range." *Id.* The defendant has the burden of proving that his sentence is unreasonable in light of the record and the § 3553(a) factors. *Id.* "Remand is not appropriate if we determine that the district court's error did not impact its ultimate sentence *and* the ultimate sentence is substantively reasonable." *Id.* at 18–19.

Here, we need not resolve whether the district court erred in departing upward under § 5K2.1. The court stated that it viewed the sentence of 130 months as "the appropriate sentence for this case," "regardless of what the guidelines said." And "based on the

totality of the circumstances of this case, particularly th[e] [§] 3553(a) factors," the court explained, "this is the sentence I would have given regardless of the guidelines calculations." In short, the court stated that it would have imposed the same sentence regardless of its decision to apply § 5K2.1.

As a result, we assume the § 5K2.1 departure does not apply and reduce McKinney's guideline range accordingly.[2] *See Grushko*, 50 F.4th at 18. Without the eight-level increase, McKinney's offense level would have been 22, for a resulting guideline range of 51 to 63 months of imprisonment. Thus, the question is whether the sentence of 130 months "would be substantively reasonable under that guideline range." *Id.*

## A.

McKinney has not shown that the 130-month total sentence, even when considered as a 67-month upward variance from the top of the guideline range, was substantively unreasonable in light of the record and the § 3553(a) factors. *See id.* In imposing that sentence, the court found that relevant conduct of the drug conspiracy resulted in death, and that the death had not otherwise been incorporated into the guideline range.

The record supports the district court's finding that Duckworth's death resulted from McKinney's conduct or the reasonably

---

[2] McKinney cites no authority for his contention that a guideline-departure decision should be treated any differently in this regard than other guideline-applications decisions.

foreseeable conduct of others in furtherance of the conspiracy. The trial evidence showed that McKinney sold pills containing fentanyl to coconspirator Cothern, who in turn sold them to Duckworth. Testing revealed the presence of fentanyl in Duckworth's system, and the medical examiner testified that the presence of fentanyl "directly led to the drowning and the death," and that there was "no other reason" for him to drown. The court also cited evidence of a preexisting drug conspiracy between Cothern and McKinney, as well as the jury's verdict on Count One finding a conspiracy beginning in July 2020. Based on this evidence, the district court reasonably concluded that Duckworth's death resulted from fentanyl Cothern supplied as part of the conspiracy. And McKinney does not dispute the court's finding that it was reasonably foreseeable that "someone would die, or would overdose from the ingestion of those drugs" sold as part of the conspiracy. *See, e.g., United States v. Westry*, 524 F.3d 1198, 1219 (11th Cir. 2008) ("Where a conspirator is involved in distributing drugs to addicts, . . . it is a reasonably foreseeable consequence that one or more of those addicts may overdose and die.").

McKinney admits that he lacks a "good faith argument the sentence was substantively unreasonable" if the district court was permitted to hold him responsible for Duckworth's death. And we agree that the record does not support a conclusion that the district court abused its discretion "by arriving at a sentence that is outside the range of reasonable sentences dictated by the facts of the case." *Grushko*, 50 F.4th at 20.

**B.**

To the extent McKinney argues that, based on the jury's verdict, the district court could not consider the death at all, including when evaluating the § 3553(a) factors, we disagree.

It is well settled that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997); *see United States v. Culver*, 598 F.3d 740, 752–53 (11th Cir. 2010); *United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir. 2006). That's because an "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *Watts*, 519 U.S. at 257 (quotation marks omitted). Thus, in applying advisory guidelines, courts may consider "relevant acquitted conduct" so long as the facts are "proved by a preponderance of the evidence and the sentence imposed does not exceed the [statutory] maximum sentence authorized by the jury verdict." *Faust*, 456 F.3d at 1348.

McKinney maintains that this case is different because, in contrast to the "general verdict" at issue in *Watts*, the jury here made an "affirmative finding" that "death did not result from the use of such substance, the distribution of which was the object of the conspiracy." Because the jury affirmatively found that death did not result from the conspiracy, McKinney contends, the court erred by "disregard[ing] the jury's explicit finding of fact and find[ing] the opposite."

Our precedent, however, does not support McKinney's argument that the jury made an affirmative factual finding that bound the district court at sentencing. Rather, this case is like *United States v. Williams*, 51 F.3d 1004, 1012 (11th Cir. 1995), *abrogated in part by Jones v. United States*, 526 U.S. 227 (1999), which affirmed the grant of a § 5K2.1 death departure in nearly identical circumstances.

In *Williams*, the district court applied an upward death departure under § 5K2.1 even though a jury had found that "a death did not result from Williams's violation of the carjacking statute." *Id.* at 1007. Williams argued on appeal that the § 5K2.1 departure "was erroneous because the jury found that [the] death did not result from his carjacking violation." *Id.* at 1012. But we affirmed, explaining that "[a]cquitted conduct may be considered by a sentencing court because a verdict of acquittal demonstrates a lack of proof sufficient to meet a beyond-a-reasonable-doubt standard—a standard of proof higher than that required for consideration of relevant conduct at sentencing." *Id.* (quotation marks omitted).

Here, the district court did not err by relying on acquitted conduct at sentencing. The facts here are not meaningfully distinguishable from those in *Williams*, which affirmed a § 5K2.1 departure despite the jury's finding that a "death did not result" from the underlying crime. *Id.* at 1007. That jury finding, according to *Williams*, does not prevent the court from holding the defendant responsible for the death at sentencing. *See id.*; *see United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior

precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court.") (quotation marks omitted). Accordingly, despite the jury's affirmatively phrased finding that a death did not result, we cannot say the district court clearly erred in finding that Duckworth's death resulted by relevant conduct.

McKinney also maintains that the § 5K2.1 departure was improper because, in his view, the jury's verdict implies he was not a member of the conspiracy at the time of Duckworth's death in August 2020. We reject McKinney's construction of the verdict.

The jury returned a guilty verdict on Count One, which charged a conspiracy to possess with intent to distribute and to distribute fentanyl "at least as early as July 2020 continuing until February 2021." McKinney suggests we should look behind this finding, pointing to jury notes during deliberations and the jury's finding that a death did not result. But "as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count." *United States v. Mitchell*, 146 F.3d 1338, 1345 (11th Cir. 1998). And McKinney makes no claim that the evidence was insufficient to support his conviction on Count One. Plus, as the district court noted at sentencing, the record contained evidence of drug transactions between Cothern and McKinney both before and after August 12, 2020, which supports a finding that McKinney participated in a conspiracy with Cothern during that time. Thus, this case is easily distinguishable from *Westry*, where there was no evidence the defendant was a

member of the conspiracy before the death at issue.  *See* 524 F.3d at 1220–21.

## IV.

For these reasons, we affirm McKinney's sentence.

**AFFIRMED.**